IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JEFFERY GAYLON DOUGLAS,               )
                                      )
        Petitioner,                   )
                                      )
v.                                    )        No. 1:13-CV-01129-JDB-egb
                                      )
MIKE PARRIS,                          )
                                      )
        Respondent.                   )

ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2254,
DENYING A CERTIFICATE OF APPEALABILITY, AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

In 2010, Jeffery Gaylon Douglas was convicted of rape and sexual battery following a

jury trial in the Circuit Court of Madison County, Tennessee. After unsuccessfully appealing his

conviction, he sought state post-conviction relief, which was denied.

Proceeding *pro se*, he now seeks federal habeas corpus relief challenging his conviction

and sentence pursuant to 28 U.S.C. § 2254. (Pet., ECF No. 1.)[1]  For the reasons discussed

below, the petition is DENIED.

**LEGAL STANDARD**

The statutory authority for federal courts to issue habeas corpus relief for persons in state

custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"). Under the federal habeas statute, relief is available "only on

the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of

the United States." 28 U.S.C. § 2254(a). The federal court's power is restrained further where

_____

[1] Douglas, who is designated as Tennessee Department of Corrections prisoner No.
467106, is currently incarcerated at Northwest Correctional Center ("NWCC") in Tiptonville,
Tennessee. The Respondent is Mike Parris, Warden of NWCC.

the petitioner's federal claim was "adjudicated on the merits" in the state courts.  *See* 28 U.S.C.

§ 2254(d).  Under those circumstances, federal habeas relief "may not be granted" unless:

> the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court, [28 U.S.C.] § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 412 (2000); or . . . "involved an unreasonable application of" such law, § 2254(d)(1); or . . . "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

*Harrington v. Richter*, 562 U.S. 86, 100 (2011).

A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13.  An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

There is little case law addressing the "unreasonable determination of the facts" standard of § 2254(d)(2).  The Supreme Court has explained, however, that a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion.  *See Wood v. Allen*, 558 U.S. 290, 301 (2010).  Moreover, although the Sixth Circuit has described the standard as "demanding but not insatiable," it construes the standard in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary.  *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2011) (internal quotation marks and citation omitted).

Before requesting relief under § 2254, a federal habeas petitioner must first exhaust available state remedies.  *See* 28 U.S.C. § 2254(b)-(c); *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).  To exhaust his state remedies, a petitioner must present the very issue on which he seeks

relief from the federal court to all levels of state court review, including the state's highest court on discretionary review, except where the state has explicitly disavowed state supreme court review as an available state remedy. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999). Because Tennessee has so disavowed state supreme court review, *see* Tennessee Supreme Court Rule 39, a prisoner in state custody in Tennessee will have exhausted state remedies when he presents his claim "to the Court of Criminal Appeals or the Supreme Court, and relief has been denied." *Id.*; *see also Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003).

## BACKGROUND

The following background summary is drawn from the Tennessee Court of Criminal Appeals' ("TCCA") recitation of the evidence presented at Douglas' trial. *See State v. Douglas*, No. W2010-00986-CCA-R3-CD, 2011 WL 915052, at *1 (Tenn. Crim. App. Mar. 16, 2011.).[2] The procedural facts are drawn from the state court record filed by Respondent. (*See* State Rec., ECF No. 26.)

## I.  DOUGLAS' TRIAL

Thirteen-year-old F.S. testified that on April 15, 2009, she spent the night at her friends' house, which was located a few doors down from her own home. The friends' stepfather was Petitioner Jeffery Douglas and their mother was Tina Douglas, Jeffery's wife. F.S. slept in the bedroom that Tina shared with her nineteen-year-old daughter, Janice "Leann" Roberson. Tina and Leann shared the bed and F.S. spent the night on a pallet on the floor. F.S. testified that she went to bed after Tina and Leann were already in bed. The next morning, F.S. was awakened by "a strange feeling that something was touching [her] butt and [her] private." F.S. saw that

---

[2] Some portions of the state court's recitation are paraphrased and some are used *verbatim*. For readability, quotation marks for *verbatim* portions have not been used. Citations to the TCCA's published opinions in Douglas' case will be in Westlaw citation format only, and will not include the ECF docket number.

Jeffery Douglas was touching her; however, being half-asleep, she did not think much of it and went back to sleep. Sometime later, F.S. was awakened again to find Douglas touching her buttocks and genital area under the clothes, penetrating her vagina with his hand or finger and "rubbing it." F.S. testified that she then yelled at Douglas to stop and yelled for Tina, but Tina did not wake up. Without putting her shoes on, F.S. ran home and told her mother and her mother's fiancé, Ralph Turner, what Douglas had done to her. F.S. said that she in no way consented to Douglas touching her and that she found the touching to be painful.

F.S. further testified that she had spent the night at Douglas' house in the past and that he usually woke her up by yelling her name and "push[ing] her shoulder." She said, however, that "this time . . . was different." She acknowledged that she and Douglas had not been on good terms since he testified against F.S.'s brother in a juvenile court proceeding. F.S. testified that Douglas had asked her on the evening of the incident why she was mad at him and she had replied that she was angry about what Douglas had done to her brother.

Ralph Turner testified that on the morning of April 16, 2009, F.S. arrived home "[c]rying, borderline hysterical, upset." F.S. told Turner what Douglas had done to her and Turner, in response, went to Douglas' house and confronted him about the incident. Douglas told Turner that he had just been pushing on F.S. to wake her up and that he was sorry if anything happened that made her feel bad or scared. After returning home, Turner and F.S.'s mother called the police. The police arrived at F.S.'s house and took a report. F.S. was then taken to see a doctor.

Dr. Lisa Piercey, an expert in child abuse pediatrics, related that she did not find any signs of trauma to the genitals in her physical examination of F.S. Piercey said, however, that it was not unusual to see no signs of trauma because, among other reasons, digital penetration often causes no perceptible injuries.

Tina Douglas recalled that, on the night of the incident, she and F.S. went to bed at the same time, while her daughter Leann was still at work. Tina awoke the next morning between 5:00 and 5:15 a.m. She testified that she did not see anything out of the ordinary that morning or hear anyone shouting or screaming. When she left for work shortly after 6:00 a.m., Douglas was awake in his room.

Leann Roberson testified that, when she arrived home from work around 2:00 a.m. on April 16, F.S. was asleep on the floor in the bedroom. Leann slept on the bed within "an arm's reach" of F.S. When Leann's alarm sounded at 7:00 a.m., she noticed that F.S. was no longer there. Describing herself as "an extremely light sleeper," Leann testified that she did not hear any yelling or commotion that morning, but also admitted that she did not hear her mother or F.S. leave the bedroom.

Douglas testified that he did not know that F.S. had spent the night at his house until he saw her in Tina's bedroom the next morning. As Douglas was preparing to leave for work, he began waking up the children so they could get ready for school. After first calling to F.S. to wake up, he left the bedroom to call the other children. Shortly thereafter, Douglas returned to F.S. and "touched her enough to make her realize that somebody was talking to her." He related that he did not touch F.S. in an inappropriate manner and said that he touched her in the area of her stomach, shoulder, or back. He recalled that as he was preparing to leave the house, Turner showed up and accused him of touching the victim inappropriately. Douglas told Turner "I'm sorry, I don't know what you're talking about." Petitioner stated further that F.S.'s family had "started drifting from [him]" after he testified against F.S.'s brother. The family accused him of lying in the brother's case.

Douglas was found guilty of rape and sexual battery and sentenced to concurrent terms of ten and two years, respectively.

## II.     POST-TRIAL PROCEEDINGS

Petitioner appealed his conviction and sentence to the Tennessee Court of Criminal Appeals. *See Douglas*, 2011 WL 915052, at *1. The TCCA denied relief, *id.* at *5, and the Tennessee Supreme Court denied permission to appeal. (*See* APA Den., ECF No. 26-3 at 47.) Douglas thereafter sought post-conviction relief and filed an amended petition alleging numerous grounds for relief from his conviction, including that his trial counsel had been ineffective. (*See* P-C Pet., ECF No. 26-4 at 6-12; P-C Am. Pet., ECF No. 26-4 at 21-31.) The post-conviction court appointed counsel for Douglas and held an evidentiary hearing. The court denied relief. *See Douglas v. State*, No. W2012-00012-CCA-R3-PC, 2013 WL 1557363, at *1 (Tenn. Crim. App. Apr. 9, 2013). He appealed on the single ground that his trial counsel had been ineffective in allowing him to testify. *See id.* at *3. The TCCA affirmed the lower court's decision, *id.* at *6, and the Tennessee Supreme Court denied permission to appeal. (*See* APA Den., ECF No. 26-6 at 52.)

## III.    DOUGLAS' § 2254 PETITION

The documents from which the Court gleans Petitioner's habeas claims include Douglas' Petition (Pet., ECF No. 1); Supplement to the Petition (Suppl. Pet., ECF No. 41); Second Supplement to the Petition (2d Suppl. Pet., ECF No. 49), "Brief and Argument" (Pet. Br., ECF No. 1-2); and supplemental filings relating to the indictment and grand jury proceedings (ECF

Nos. 53, 57, 62). Because Douglas proceeds *pro se*, the Court liberally construes his

submissions as raising the following claims:[3]

1. The evidence was insufficient to support Douglas' convictions.

2. Petitioner's trial counsel was ineffective for:

    a. failing to locate witnesses in Douglas' favor;
    b. failing to follow-up with/interview witnesses;
    c. failing to make objections and ask relevant questions during trial testimony; and
    d. failing to communicate with Douglas and exercise diligence.

3. A witness improperly remained in the courtroom.

4. Petitioner was the victim of malicious prosecution.

5. He was the victim of extortion by Ralph Turner.

6. A juror engaged in misconduct.

7. The grand jury proceedings and resulting indictment were invalid because state law requirements were not met and the proceedings were "rigged."

8. The victim and Ralph Turner gave false information in their victim impact statements.

9. The victim and expert witness, Dr. Piercey, gave false testimony at trial.[4]

---

[3] In his petition, Douglas asserts four ambiguous claims for relief, which he denotes as Grounds Six through Nine. (*See* Pet., ECF No. 1 at 7.) Those assertions are nothing more than recitations of legal standards and are dismissed. *See* Rule 2(c), Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules") (requiring a petitioner to specify the facts supporting each ground). The Court does not construe as claims many of the accusations contained in Douglas' numerous submissions to the Court. Some of them serve as additional or repetitive arguments in support of Douglas' contentions, and some are nonsensical or irrelevant. *See McCloy v. Berghuis*, No. 5:06-CV-04, 2008 WL 5062895, at \*18 (W.D. Mich. Nov. 25, 2008) (drawing petitioner's claims from only the "intelligible" allegations contained in a "confusing group of accusations, some of which . . . overlap[ped] claims set forth elsewhere in the petition," and holding that "utterly nonsensical" accusations did not "merit a serious response").

[4] Claims Seven through Nine are based on what Douglas calls "newly discovered" evidence. (*See* 2d Suppl. Pet., ECF No. 49 at 2-6; Suppl. Resp., ECF No. 66 at 6-11.) In addition to addressing each category of "newly discovered" evidence as a distinct claim, both

For the following reasons, the Court finds that Claim One is without merit under the standards set forth in § 2254(d). All remaining claims are barred from federal habeas review under the doctrine of procedural default.

## I. PROCEDURALLY DEFAULTED CLAIMS

The procedural default doctrine is a "corollary to the . . . exhaustion requirement." *Dretke v. Haley*, 541 U.S. 386, 392 (2004). Under the doctrine, a federal habeas petitioner's claim is barred from habeas review, except in narrow circumstances, where the petitioner did not give the state courts a full and fair opportunity to resolve his constitutional claims by invoking one full round of the state's established appellate review process and that process is no longer available. *See Boerckel,* 526 U.S. at 845; *see also Manning v. Alexander,* 912 F.2d 878, 881 (6th Cir. 1990). A federal habeas petitioner who is a Tennessee prisoner therefore procedurally defaults a claim by failing to present the claim to the TCCA while the state appellate process is available to him. *See, e.g.*, *Reeves v. Lee*, No. 1:13-CV-01026, 2016 WL 890950, at *2 (W.D. Tenn. Mar. 8, 2016) (Tennessee prisoner procedurally defaulted claim he failed to present to the TCCA).

To obtain federal court review of a procedurally defaulted claim, a petitioner must show "cause" for the default and "actual prejudice" stemming from the violation of federal law. *Teague v. Lane*, 489 U.S. 288, 308 (1989). Cause for a procedural default depends on some "objective factor external to the defense" that interfered with the petitioner's efforts to comply with the procedural rule. *Coleman v. Thompson,* 501 U.S. 722, 753 (1991).

---

parties also address, and the Court likewise assesses, whether the "newly discovered" evidence is grounds to excuse Douglas' procedural defaults.

Alternatively, a petitioner's default may be excused where he demonstrates that the failure by the federal habeas court to consider his claim "will result in a fundamental miscarriage of justice." *Id.* at 750 (internal quotation marks omitted). To establish a fundamental miscarriage of justice, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray v. Carrier,* 477 U.S. 478, 496 (1986)) (internal quotation marks omitted).

## A.     Douglas' Defaults

Respondent argues that Douglas procedurally defaulted all of his claims, except his sufficiency of the evidence claim. (Ans., ECF No. 25 at 10-11; Suppl. Ans., ECF No. 65-1 at 3-5.) The Court agrees. On direct appeal, Petitioner's only claim was that the evidence was insufficient to convict him. (*See* Def. Direct App. Br., ECF No. 26-3 at 7, 12-14.) In his post-conviction appeal, he raised the sole claim that his trial counsel had been ineffective in allowing him to testify. (*See* Def. P-C Br., ECF No. 26-6 at 13.) Of all the numerous claims Douglas now raises in his federal habeas petition, only the sufficiency of the evidence claim was exhausted through one full round of state court proceedings.[5]

Accordingly, Douglas has procedurally defaulted all of his claims, except for Claim One.

## B.     Grounds to Excuse the Defaults

### 1.     Cause and prejudice

The inmate has not shown, and indeed does not appear to argue, "cause" and "prejudice" to excuse his failure to exhaust Claims Two through Six and Claims Eight and Nine through one

---

[5] In his initial post-conviction proceeding, Douglas raised the ineffective-assistance grounds he raises in his petition here, but he did not present those grounds to the TCCA. *See Douglas*, 2013 WL 1557363, at *1 n.2.

full round of state-court proceedings. Douglas' procedural defaults as to those claims are therefore not excused under the cause-and-prejudice exception.

With regard to Claim Seven, which alleges numerous irregularities in the grand jury proceedings and the indictment, Douglas attempts to show cause for his procedural default on the ground that the irregularities recently came to light in "newly discovered" evidence in the grand jury records and in an answer to an interrogatory in his civil rights suit. (*See* Gr. Jury. Sub., ECF No. 57 at 12-13; Suppl. Resp., ECF No. 66 at 10.) In Claim Seven, Douglas challenges the grand jury proceedings and the indictment on the following grounds: (1) the foreperson of the grand jury was appointed *pro tem* in violation of state statutory requirements; (2) the indictment was not signed by the foreperson as required under state law, or was forged; (3) the foreperson's *pro tem* appointment, as well as the *pro tem* appointments of other forepersons over several years, shows that the appointing judge sought to hand-pick a biased foreperson who was likely to indict Douglas regardless of probable cause, (4) the fact that the "Writ of Venire Facias for Grand and Petit Jury" contains the names of some of the jurors on Douglas' petit jury suggests that the same individuals were picked to sit on the grand jury that indicted him; and (5) Investigator Danielle Jones was falsely listed as a "prosecutor" on the indictment, as evidenced by her interrogatory answer that she is not a licensed attorney and has, therefore, never been a prosecutor. (*See* 2d Suppl Pet., ECF No. 49; Gr. Jury Sub., ECF No. 57.)

Even assuming that Claim Seven is grounded on federal constitutional rights,[6] Douglas has not carried his burden of establishing cause for his default because he has not shown that

---

[6] Douglas' contentions about irregularities in the grand jury proceeding are based primarily on state statutory requirements that have no recognizable federal analogs. *See generally Estelle v. McGuire,* 502 U.S. 62, 67 (1991) (habeas relief "does not lie" for violations of state law); *see also Davis v. Mantello*, 42 F. App'x 488, 490 (2d Cir. 2002) ("Claims of deficiencies in state grand jury proceedings [are generally] not cognizable in a habeas corpus

some "objective factor external to the defense," *Coleman*, 501 U.S. at 753, caused him to procedurally default the claim. Specifically, Petitioner has not demonstrated that the grand jury documents and information about Jones' professional status, all of which purportedly prove bias and procedural irregularities,[7] were not "reasonably available" to Douglas or his counsel at the time of the default. *Murray,* 477 U.S. at 488 (1986) ("[A] showing that the factual or legal basis for a claim was not reasonably available to counsel . . . would constitute cause under this standard."). The inmate has not established cause for the failure to exhaust Claim Seven.

For these reasons, the Court finds that Douglas has not shown cause to excuse the procedural defaults of Claims Two through Nine.

### 2. Actual innocence

Petitioner contends that all of his defaults should be excused on the ground that he has newly-discovered evidence of his actual innocence. (*See* Suppl. Resp., ECF No. 66 at 10.) Specifically, Douglas says that he has proof that Ralph Turner, F.S., and Dr. Piercey lied. (*See id.* at 9; 2d Suppl. Pet., ECF No. 49 at 3.) In order to invoke actual innocence as a means to

---

proceeding in federal court."); *Brofford v. Marshall*, 751 F.2d 845, 856 (6th Cir. 1985) ("Petitioner's related assertion of error, that the number of grand jurors did not satisfy the statutory requirements set by the legislature as it was mandated to do by the state constitution, does not raise a federal constitutional claim.").

[7] The documents do not give rise to reasonable inferences of bias and manipulation, as Douglas argues. It is only by stacking speculation upon speculation that he is able to conclude that the appointing judge and foreperson were biased against him and that the process was otherwise manipulated in order to secure his indictment. In addition, Jones' interrogatory answer that she is "not a licensed attorney, and therefore ha[s] never been a prosecutor," does not prove that the indictment falsely lists Jones as the "prosecutor"; in the grand jury context "prosecutor" means an individual who "lay[s] an accusation before the proper authorities," Tn. Criminal Trial Practice § 12:5 (2015-16 ed.), and may include police officers. *See, e.g., State v. Overton*, 644 S.W.2d 416, 417 (Tenn. Crim. App. 1982) (prosecutor named in the indictment was a police officer).

excuse a procedural default, a petitioner must provide evidence showing that it is more likely than not that no reasonable juror would have convicted him. *Schlup*, 513 U.S. at 327.

Douglas presents two purportedly "new" pieces of evidence in support of his actual innocence claim. The first is a warranty deed showing that Turner sold multiple parcels of property to an investment group on February 13, 2009, two months before the sexual assaults. (*See* Pet., ECF No. 1-10 at 4-6; 2d Suppl. Pet., ECF No. 49 at 3.) He contends that the document proves that Turner and F.S. lied in their victim impact statements when they said that they moved in order to keep the victim safe from Douglas. (*See* Suppl. Resp., ECF No. 66 at 3.) The second piece of evidence is a notation in Investigator Jones' notes that F.S. went to the hospital on April 17, 2009. Douglas argues that the notation contradicts F.S. and Dr. Piercey's testimonies that F.S. went to the hospital on April 16, the day of the assaults. (*See* 2d Suppl. Pet., ECF No. 49 at 3; Suppl. Resp., ECF No. 66 at 3.)

Neither the warranty deed nor Jones' notation support Petitioner's claim that he is actually innocent of the crimes. Douglas does not explain how purportedly false victim impact statements, or an inconsistency in the evidence regarding the day that F.S. went to the hospital, demonstrate that he is not guilty of the crimes. At best, this is impeachment evidence, which is "a step removed from evidence pertaining to the crime itself." *Calderon v. Thompson*, 523 U.S. 538, 563 (1998). Douglas' proof, therefore, does not provide a basis for a finding of actual innocence to allow the Court to review the procedurally defaulted claims. *See id.* (impeachment evidence did not establish actual innocence to permit petitioner to evade procedural bar); *see also Dawson v. Rapelje*, No. 2:14-CV-12603, 2015 WL 3868135, at *7 (E.D. Mich. June 23, 2015) (evidence which tended to impeach fellow inmate's testimony that petitioner confessed to the crime did "not provide sufficient evidence of actual innocence" to allow petitioner to evade

procedural bar) (citing *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) (newly discovered impeachment evidence "will seldom, if ever, establish actual innocence")).

Douglas has failed to carry his burden of showing that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. Accordingly, because he has not demonstrated cause and prejudice or actual innocence to overcome the procedural default of Claims Two through Nine, the claims are DISMISSED.

## II. MERITS REVIEW OF DOUGLAS' SUFFICIENCY OF THE EVIDENCE CLAIM (CLAIM ONE)

Petitioner submits here, as he did before the TCCA, that the evidence was insufficient to convict him of rape and sexual battery because (1) the victim's testimony was contradicted by Tina and Leann's testimony, and (2) a fatal variance existed between the crime of rape charged in the indictment and the proof submitted at trial. *See Douglas*, 2011 WL 915052, at \*3; Pet., ECF No. 1 at 6; Pet. Br., ECF No. 1-2 at 6. The claim is without merit.[8]

### A. The TCCA's Decision

In finding that the evidence was sufficient to support Douglas' convictions, the TCCA made two subsidiary rulings: (1) notwithstanding certain testimonial conflicts, the victim's testimony was sufficient to support the convictions, and (2) the variance between the proof and the crime of rape charged in the indictment was not fatal. *See Douglas*, 2011 WL 915052, at \*3-5.

---

[8] In this habeas proceeding, Douglas points to numerous other inconsistencies that he believes undermine the State's evidence. (*See, e.g.*, Am. to Add'l Ev., ECF No. 29 at 7-8.) These arguments were not presented to the TCCA and are therefore procedurally defaulted. Nevertheless, the Court notes that the gist of all of his "inconsistent evidence" arguments is that the TCCA should have resolved the inconsistencies in his favor. *See id.* That assertion is meritless; under Supreme Court precedent, a reviewing court is to view the evidence in the light most favorable to the prosecution upon a jury's finding of guilt and to defer to the jury's resolution of evidentiary conflicts. *See Jackson*, 443 U.S. at 318-19.

### 1. Victim's testimony

Holding that F.S.'s testimony was sufficient to convict Douglas of rape and sexual

battery, the TCCA stated:

> "[W]e apply the rule that where sufficiency of the convicting evidence is
> challenged, the relevant question of the reviewing court is "whether, after viewing
> the evidence in the light most favorable to the prosecution, *any* rational trier of
> fact could have found the essential elements of the crime beyond a reasonable
> doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560
> (1979); *see also* Tenn. R.App. P. 13(e) ( "Findings of guilt in criminal actions
> whether by the trial court or jury shall be set aside if the evidence is insufficient to
> support the findings by the trier of fact of guilt beyond a reasonable doubt.");
> *State v. Evans,* 838 S.W.2d 185, 190–92 (Tenn.1992); *State v. Anderson,* 835
> S.W.2d 600, 604 (Tenn.Crim.App.1992). All questions involving the credibility
> of witnesses, the weight and value to be given the evidence, and all factual issues
> are resolved by the trier of fact. *See State v. Pappas,* 754 S.W.2d 620, 623
> (Tenn.Crim.App.1987). "A guilty verdict by the jury, approved by the trial judge,
> accredits the testimony of the witnesses for the State and resolves all conflicts in
> favor of the theory of the State." *State v. Grace,* 493 S.W.2d 474, 476
> (Tenn.1973).
>
> * * *
>
> In the light most favorable to the State, the evidence shows that the defendant
> approached the victim while she was sleeping and touched her buttocks and
> genital area. The defendant returned to the sleeping victim a short while later and
> touched her buttocks and genital area under her clothes, penetrating her vagina
> with his hand or finger and "rubbing it." The victim said that she did not consent
> to any of the defendant's touchings and that she found them to be painful. This
> evidence was sufficient for a rational trier of fact to find the defendant guilty of
> rape and sexual battery. The defendant challenges the credibility of the victim's
> testimony in light of the testimony from Tina Douglas and Leann Roberson that
> they did not hear any screaming or yelling from the victim as she had testified.
> However, all of the testimony was heard and assessed by the jury as the trier of
> fact, and we will not disturb its determination.

*Id.* at *3-4.

### 2. Variance

Believing that a fatal variance existed between the proof and the crime of rape charged in

the indictment, Douglas argued before the TCCA that the indictment charged rape by either

14

"force or coercion," but "[a]t no time did [F.S.] state that [Douglas] threatened her, held her down, or used any other indicia of force or coercion to accomplish the sexual penetration." (Def. Dir. App. Br., ECF No. 26-3 at 13.) Holding that the variance was not fatal, the TCCA stated:

> Rape is defined as "unlawful sexual penetration of a victim by the defendant" accomplished with "[f]orce or coercion," or "without the consent of the victim and the defendant knows or has reason to know at the time of penetration that the victim did not consent," or when the defendant "knows or has reason to know that the victim is ... physically helpless[.]" Tenn.Code Ann. § 39–13–503(a)(1), (2), (3) (2006).
>
> * * *
>
> A variance arises when the proof presented at trial departs from the allegations in the indictment. *State v. Keel,* 882 S.W.2d 410, 416 (Tenn.Crim.App.1994). . . . In general, a variance between an indictment and the proof at trial
>
>> is not fatal if (1) the defendant is sufficiently informed of the charges levied against him so that he can adequately prepare for trial and, (2) the defendant is protected against a subsequent prosecution for the same offense based on double jeopardy grounds. The variance is not to be regarded as material when the indictment and proof substantially correspond. A material variance occurs only if the prosecutor has attempted to rely at the trial upon theories and evidence that were not fairly embraced in the allegations made in the indictment.
>
> *State v. Mayes,* 854 S.W.2d 638, 640 (Tenn.1993) (citations omitted). As long as the defendant is not misled at trial, any variance is not considered to be a basis for reversal.
>
> * * *
>
> Upon review, we conclude that any variance between what was charged in the indictment and the proof at trial was not prejudicial in this case. The indictment cited the applicable code section, which included the optional circumstances supporting rape. The defendant makes no allegation that he was surprised by the proof at trial. At trial, the defendant denied that he ever penetrated or touched the victim inappropriately. He in no way tailored his defense to respond to the circumstances of force or coercion and was thereby prejudiced by the State presenting evidence supporting other circumstances proving the rape charge. Moreover, the variance in this case does not put the defendant in jeopardy of being prosecuted a second time for the same offense. Therefore, the variance in

this case is not fatal and the evidence sufficiently establishes the offense of rape.

*Douglas*, 2011 WL 915052, at *3, 4-5.

### B.    The Governing Supreme Court Standards

The Supreme Court's decisions in *Jackson*, 443 U.S. at 318-19, and *Berger v. United States,* 295 U.S. 78, 83 (1935), govern this Court's evaluation of the TCCA's rejection of Douglas' sufficiency of the evidence claim.   As the TCCA noted, *see Douglas*, 2011 WL 915052, at *3, the Supreme Court in *Jackson* announced that the question "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 318-19 (emphasis in original).  The *Jackson* standard is deferential to—that is, "gives full play to"—the "responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id.* at 319.  *See also Cavazos v. Smith*, 132 S. Ct. 2, 3 (2011) (per curiam) (under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.").

For cases where sufficiency of the evidence is implicated by virtue of a variance between the crime charged and the proof at trial, the Supreme Court in *Berger* announced that a variance is fatal where it "affect[s] the substantial rights" of the accused.  295 U.S. at 82 (internal quotation marks and citation omitted).  Substantial rights that can be affected by a variance include (1) the accused's right to be "definitively informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at trial," and (2) the right to be "protected against another prosecution for the same offense."  *Id.*

16

An accused's right to be informed of the charges against him is not prejudiced "where the allegation and proof substantially correspond, or where the variance was not of a character which could have misled the defendant at the trial." *Id.* at 83 (quoting *Washington & G.R. Co. v. Hickey*, 166 U.S. 521, 531 (1897)).

### C. The TCCA's Decision Is Not "Contrary to" *Jackson* or *Berger*

A "state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406. Here, the TCCA expressly invoked *Jackson* and applied its "any rational trier of fact" standard to the facts of Douglas' case. *See Douglas*, 2011 WL 915252, at *3 (quoting *Jackson*, 443 U.S. at 319). The TCCA also applied *Berger*'s two-part test, as drawn from a Tennessee Supreme Court decision. *See id.* at *4 (quoting *Mayes*, 854 S.W.2d at 640). The TCCA's decision was therefore not "contrary to" clearly established Supreme Court precedent.

### D. The TCCA's Decision Is Not an "Unreasonable Application of" *Jackson* or *Berger*

In assessing whether the TCCA's decision is an unreasonable application of *Jackson* or *Berger*, the Court must show considerable deference to the TCCA's conclusions. *See Cavazos*, 132 S. Ct. at 6 (review of state court's sufficiency of the evidence determination under § 2254(d) is doubly deferential). Viewed under that deferential lens, the TCCA's determinations do not represent unreasonable applications of Supreme Court precedent.

First, the TCCA reasonably determined that F.S.'s testimony supported the convictions. F.S. testified as to Douglas' actions and her lack of consent. *Douglas*, 2011 WL 915052, at *4. The jury implicitly found F.S. to be credible and the TCCA appropriately refused to "disturb" the jury's credibility determination. *See Jackson*, 443 U.S. at 319 (the reviewing court should "give

full play to" the role of the trier of fact "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts").[9]

Second, the TCCA reasonably concluded that there was no fatal variance between the indictment and the evidence. As *Berger* makes clear, a variance is not fatal where the defendant was not "misled" at trial and where there is no risk of being tried for the same offense twice. 295 U.S. at 83. The TCCA reasonably found that Douglas was not misled into thinking that he was being tried for rape by force or coercion because he did not allege that he was surprised at trial, did not tailor his defense to a charge of force or coercion, and denied that he ever touched F.S. inappropriately. *Douglas*, 2011 WL 915052, at *5. *See, e.g.*, *Pennington v. Lazaroff*, 13 F. App'x 228, 232 (6th Cir. 2001) (state court's determination that variance was not fatal was not unreasonable where there was "no indication that defense counsel was taken by surprise with regard to any of the testimony now identified as prejudicial, or that the defense was hampered in any material fashion"). The TCCA also reasonably concluded that the variance did not put the inmate at risk of being prosecuted a second time for the same offense. *Douglas*, 2011 WL 915052, at *5. Indeed, even now in the present proceedings, Petitioner does not argue how he was misled in mounting a defense to the charge of rape or that he was at risk of being tried again for the same incident.

For these reasons, Douglas has not shown that the TCCA's decision was an unreasonable application of clearly established Supreme Court precedent.

_____

[9] As noted, Petitioner challenges a laundry list of purportedly relevant evidentiary inconsistencies that he did not raise before the TCCA. Of those procedurally-barred grounds, Douglas is particularly concerned with Dr. Piercey's testimony that she found no physical trauma to F.S.'s genitals. Piercey's testimony, however, does not undermine the TCCA's determination that F.S.'s testimony was sufficient to convict Douglas; in addition to testifying that she saw no physical trauma, Piercey also testified that digital penetration, which F.S. alleged, does not always result in physical trauma. (*See* Tr. Trans., ECF No. 26-1 at 82-84.)

## E. The TCCA's Decision Is Not "Based on an Unreasonable Determination of the Facts"

Douglas argues, without meaningful development, that the TCCA's decision was based on an unreasonable determination of the facts. (*See* Suppl. Resp., ECF No. 66 at 6.) To the extent that he means to present a § 2254(d)(2) attack on the state court's factual determination that F.S. was credible, none of his so-called "new" evidence constitutes clear and convincing proof to the contrary. *See Ayers*, 623 F.3d at 308. Accordingly, Douglas has not met his burden of demonstrating that the TCCA's decision was based on an unreasonable determination of the facts.

Because Petitioner has failed to demonstrate that the state court's rejection of his sufficiency of the evidence claim was contrary to or an unreasonable application of clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts, he is not entitled to relief on the basis of this claim. Claim One is DENIED.

## APPEAL ISSUES

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Bradley v. Birkett*, 156 F. App'x 771, 772 (6th Cir. 2005). The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Section 2254 Rules. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2)-(3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree

that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Cockrell*, 537 U.S. at 336; *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). Although a COA does not require a showing that the appeal will succeed, *Cockrell*, 537 U.S. at 337, a court should not issue a COA as a matter of course. *Bradley*, 156 F. App'x at 773.

In this case, there can be no question that the § 2254 petition is meritless for the reasons previously stated. Because any appeal by Douglas on the issues raised in his § 2254 Petition does not deserve attention, the Court DENIES a certificate of appealability.

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)-(5). In this case, for the same reasons it denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore certified, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is DENIED.[10]

IT IS SO ORDERED this 22nd day of September, 2016.

s/ J. DANIEL BREEN

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[10] If Douglas files a notice of appeal, he must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days of the date of entry of this order. *See* Fed. R. App. P. 24(a)(5).